## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAYTRON L. MOBLEY, SR.,

    Plaintiff,

    v.                              Civil Action No.:  CCB-19-3099

D. DRYBOLA,
S. HOUSE,
EARL CLARK,
C. KEOLKER,
OFFICER ROUNDS, SR.,
J. HARDING, CO II,
OFFICER N. DANIELS,
HOLLY PIERCE (*NKA Holly Hoover*),

    Defendants.

## MEMORANDUM OPINION

Pending in this civil rights case are motions to dismiss or in the alternative for summary judgment filed by defendants.  ECF Nos. 13 and 22.  The motion filed on behalf of defendant Holly Pierce, now known as Holly Hoover,[1] is unopposed.  Plaintiff opposes the motion filed by the remaining correctional defendants and filed a request for production of documents directed at those defendants.  ECF Nos. 24 and 25.[2]  A hearing is unnecessary for the determination of the matters pending.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, defendants' motions shall be granted and plaintiff's motion for discovery shall be denied.

---

[1] The Clerk will be directed to amend the docket to reflect the name change.

[2] Plaintiff filed additional correspondence with the court alleging that a non-defendant correctional officer, Ms. Engle, engaged in a retaliatory action unrelated to his claims in this case. ECF No. 26.  It is unclear whether plaintiff seeks to amend his complaint with this filing. The court therefore will not address these allegations in the context of this motion to dismiss. Should plaintiff wish to pursue his allegations against Ms. Engle, he must file a new complaint.

**BACKGROUND**

Plaintiff Daytron Mobley, Sr. is an inmate committed to the custody of the Maryland Division of Correction and currently confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  His complaint raises claims of excessive force, retaliation, and deliberate indifference to a serious medical need.  The facts, which are set forth below, are largely undisputed.

On January 3, 2019, at approximately 4:00 p.m., plaintiff was holding the feed up slot in his cell door open in an attempt to have the building sergeant come to his cell to talk to him.  ECF No. 1 at 1.  Because plaintiff was holding the slot-door open, defendant Officer D. Drybola could not close the door and continue his assigned tasks which made Drybola angry.  *Id*.  According to plaintiff, Drybola lunged at him and shoved him back into the cell so hard that he hit the floor, injuring his right elbow.  *Id*.  Plaintiff notified other correctional officers about his injury and he was taken to the medical unit where the laceration to his elbow was cleaned and photographs were taken.  *Id*.  Plaintiff claims that he also lost sensation in his pinky finger as a result of the injury. *Id*.  Plaintiff alleges he found out later that Drybola behaved in this manner because plaintiff filed lawsuits against Officers Earl Clark and Warren Mallow.  *Id*.  Plaintiff does not explain how he found this out.

Defendant Drybola asserts that he gave plaintiff several verbal commands to stop holding the feed up slot open and plaintiff did not comply with the orders.  ECF No. 22-3 at 1 (Use of Force Report).  Drybola then pushed plaintiff's hands back into the cell so that the door could be closed and plaintiff was issued an infraction for his actions.  *Id*. at 10.  Plaintiff was taken to the medical unit for a one-inch long laceration on his elbow that he sustained during the incident.  ECF No. 1-1 at 14.  Plaintiff was given Tylenol for pain; the wound was cleaned and closed with steri-

stripes.  *Id*.  An x-ray of plaintiff's elbow the following day revealed no other injury to his arm.  *Id*. at 13.

On June 14, 2019, plaintiff received a Notice of Inmate Rule Violation from defendant Officer S. House charging plaintiff with masturbation.  ECF No. 1 at 1.  Plaintiff claims House wrote the infraction in an attempt to humiliate plaintiff.  *Id*.  At the adjustment hearing for the infraction plaintiff was found not guilty and the charge was dismissed.  *Id*.  In plaintiff's view, the dismissal of the ticket is proof that the charge against him was fabricated.  *Id*.

Prior to receiving the infraction from Officer House, plaintiff states that he received a "bogus ticket" from defendant Officer Keolker for "dried out banana peelings that the [officer] claim[ed] was K-2 (synthetic cannabinoids)."  *Id*.  at 2.  Plaintiff received "25 days in solitary confinement" because he was forced to plead guilty to the infraction after Keolker claimed test results came back as positive.  *Id*.  Plaintiff claims he pled guilty in order to minimize the amount of time he had to serve in segregation.  *Id*.

Defendants explain that plaintiff filed administrative remedy procedures ("ARPs") alleging that he received "bogus tickets" for the incidents involving Keolker and House.  On May 16, 2019, plaintiff filed ARP No. NBCI-0967-19 regarding the ticket issued by Keolker.  ECF No. 1-1 at 9–10.  In the ARP plaintiff stated that the substance found in his cell was dried banana peels and suggests that he be assigned to administrative segregation while the substance was sent to an outside lab for more accurate testing.  *Id*.  On May 18, 2019, the ARP was dismissed on the procedural ground that disciplinary proceedings may not be challenged through the administrative remedy procedure.  *Id*. at 9.  Plaintiff appealed this matter to the Inmate Grievance Office ("IGO") where it was dismissed as wholly lacking in merit.  ECF No. 22-4 at 1 (letter from Dep. Director

Robin Woolford noting that by pleading guilty to the infraction plaintiff had admitted to the misconduct charged and waived his right to a hearing).

On June 16, 2019, plaintiff filed ARP No. NBCI-1204-19 concerning the infraction he received from House for masturbation. ECF No. 1-1 at 7. This ARP was also dismissed for the same procedural reason. *Id*. Plaintiff also appealed this response to the IGO. The appeal was dismissed because the infraction had been dismissed on June 20, 2019 when plaintiff was found not guilty. ECF No. 22-5 at 1. Deputy Director Woolford noted that plaintiff was thus not entitled to any further relief. *Id*.

On July 6, 2019, plaintiff claims his requests for a plunger to be used to unclog the toilet in his cell were ignored by several officers. ECF No. 1 at 2. He explains that this was problematic because he "had to poop" and the only way he could do so in the toilet in his cell was to first unclog the toilet. *Id*. The urgency of his need to relieve himself overcame the need for a plunger and plaintiff used the clogged toilet in his cell. *Id*. After relieving himself, plaintiff repeatedly flushed the toilet to "flood the urine & feces[] water out [of his] toilet/cell on to the tier." *Id*. He claims that defendant Officer Rounds, Sr. retaliated against him and "pushed all of the contaminated water back into [plaintiff's] cell (aggressively)." *Id*.

On July 11, 2019, plaintiff was in a holding cell for medical observation because he swallowed a razor blade in a suicide attempt. ECF No. 1 at 2. He attributes his suicidal actions to stress caused by the correctional officers he deals with daily. *Id*. While in the holding cell he claims that defendant Officer J. Harding "boarded up all of the holding cell windows" in an effort to humiliate him. *Id*. Plaintiff adds that Harding called him "all types of names," including a racial slur, and that other officers kicked the door of the cell several times. *Id*.; ECF No. 1-2 at 2.

Harding states in her declaration that plaintiff "frequently masturbates to the point of ejaculation in front of female staff members." ECF No. 22-6 at 1, ¶ 4. She explains that the holding cell where plaintiff was being held is located in the lobby of the housing unit and has waist to ceiling-high windows for the purpose of allowing observation of the inmate at all times. *Id*. at ¶ 3. On July 11, 2019, plaintiff stood in front of the window, facing the lobby and began masturbating. *Id*. at 2, ¶ 5. Based on plaintiff's past, similar behavior, Harding covered the window on the lobby side of the holding cell with cardboard so she would not have to witness plaintiff masturbating. *Id*. Harding further explains that plaintiff was not in the cell for suicide watch; rather, he was there for medical observation. *Id*. at ¶ 7. Harding denies using any derogatory or racially offensive language during her interactions with plaintiff. *Id*. at ¶ 8.

On September 11, 2019, defendant Officer N. Daniels was escorting plaintiff during recreation time when he "suddenly stopped and grabbed the apple" plaintiff was holding in his hand. ECF No. 1 at 3. Plaintiff claims that Daniels asked why the apple had a hole in it and referred to plaintiff as "snitch boy." *Id*. Daniels then placed plaintiff "in the cage" and plaintiff admits that he refused to allow Daniels to retrieve his handcuffs from plaintiff. *Id*. Plaintiff explains that he told Daniels he wasn't letting him have the handcuffs because he needed to see Daniels's sergeant for his disrespect. *Id*. Plaintiff claims that while Daniels was calling someone on the radio, plaintiff told him that he was going to file an ARP. *Id*. Daniels then pepper sprayed plaintiff "a few times" while plaintiff remained restrained and confined to the cage. *Id*. Plaintiff states that he was not a threat at that time and the use of pepper spray by Daniels is a violation of the use of force policy as well as the Eighth Amendment. *Id*. Plaintiff states that he filed a grievance regarding this incident and is "scared for [his] life" due to the corruption among the officers. *Id*. He adds that he is receiving death threats. *Id*.

5

According to the infraction written under oath by Daniels, on September 11, 2019, he escorted plaintiff to the C-Wing Recreation cages, placed plaintiff in the cage, and instructed plaintiff to allow him to remove his handcuffs.  ECF No. 22-8 at 1.  After plaintiff refused two orders to allow Daniels to retrieve the handcuffs, Daniels used his radio to call for assistance.  *Id*. When Officer J. Northcraft arrived, Daniels told plaintiff that they were going to escort him back to the strip cage.  *Id*.  Plaintiff then began trying to "slip his handcuffs under his feet in order to get them off."  *Id*.  Daniels issued a direct order to plaintiff to stop "trying to manipulate security equipment" and plaintiff failed to comply.  *Id*.  At this time, Daniels deployed pepper spray through the cage towards plaintiff.  *Id*.  Plaintiff then complied with the orders and Sgt. Thompson and Officer Northcraft escorted plaintiff to the strip cage in Housing Unit One.  *Id*.  Daniels further explains in his declaration prepared for this lawsuit that plaintiff was attempting to move his handcuffed hands from behind him to the front by placing his hands around his feet and the pepper spray was used to prevent plaintiff from succeeding.  ECF 22-9 at 1, ¶¶ 4-5.

Plaintiff's claim against defendant Holly Pierce is that she retaliated against him for a prior lawsuit he filed against Officer Warren Mallow alleging he planted a weapon on him and used excessive force when he pepper sprayed plaintiff.  ECF No. 1 at 3.  He asserts that Pierce has refused to see him and allows officers to forge his signature to "cover their tracks."  *Id*.  Plaintiff adds that he wrote several sick call requests seeking medical attention for his pinky finger, but he was never called to see anyone for his complaint.  *Id*.  He claims that as a result he now has no feeling in his finger.  *Id*.  Plaintiff requests injunctive relief of an unspecified nature.  *Id*.

Holly Pierce, now known as Holly Hoover, states in her declaration that she is a Certified Registered Nurse Practitioner employed by Corizon Health at NBCI.  ECF No. 13-4 at 1, ¶ 2–3. She denies engaging in any retaliation against plaintiff and denies allowing anyone to forge

plaintiff's signature. *Id*. at 2, ¶ 6. She further states that she was not involved in treating plaintiff for the elbow injury he received on January 3, 2019 and was not aware of his complaints regarding his pinky finger. *Id*. at 2-3, ¶ 6. Hoover explains that plaintiff was seen for his injury on January 3, 2019, by Nurse Practitioner Katrina Opel. *Id*. at 3, ¶ 9. The small superficial tear was assessed, cleansed, and dressed; Opel also obtained a verbal order for an x-ray because plaintiff complained that it hurt to move his arm. *Id*. The x-ray was performed the following day and revealed no abnormality. *Id*. at 3, ¶ 10. Plaintiff received follow-up care for his wound on January 6, 9, 11, and 14, 2019. *Id*. at 4, ¶¶ 11–14; ECF No. 13-5 at 4–7 (medical records). Hoover states that she does not triage patient requests for medical treatment and is therefore unaware of plaintiff's requests regarding his pinky finger. ECF No. 13-4 at 5, ¶ 20.

Medical records for plaintiff indicate that he submitted a sick call request on March 17, 2019, complaining that his finger had "loss it's nerve" (sic) since the January 3, 2019 incident. ECF No. 13-4 at 5, ¶ 19; ECF No. 13-5 at 226. Plaintiff submitted another complaint about his pinky finger being injured during the January 3rd incident on August 3, 2019. ECF No. 13-5 at 217. When plaintiff was seen the following day by a nurse, he complained only of a rash and that the cell he was in was too cold. *Id*. at 33–34. Despite the fact that plaintiff was seen by medical staff numerous times through the year, he did not complain to medical staff about a loss of feeling in his right pinky finger. ECF No. 13-4 at 4–14 (listing dates plaintiff was seen and complaints he voiced).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a

reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48.  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015).  At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Plaintiff filed a Request for Production of Documents under Fed. R. Civ. P. 34 (ECF No. 25) which the court construes as a motion filed pursuant to Fed. R. Civ. P. 56(d).[3]  Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot

---

[3] Under Local Rule 104.4, "discovery shall not commence . . . until a scheduling order is entered," unless the court orders or the parties agree otherwise. No scheduling order has been entered in this case. Local Rule 104.4 (D. Md. 2018).

complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To adequately raise the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery."  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (internal quotation marks and citation omitted).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be essential to the opposition." *Id.* (internal quotation marks, citation, and alteration omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Plaintiff's motion does not demonstrate why the documents listed are necessary for opposing the pending dispositive motions. ECF No. 25.  Rather, plaintiff simply states his desire to have copies of Division of Correction policies and manuals governing the use of force against inmates.  Plaintiff appears to know the content of these documents as he cites to them in his complaint and his opposition response.  Further, he attaches a copy of a regulation governing use of force to his complaint.  ECF No. 1-1 at 1–5.  The motion will accordingly be denied.

9

## ANALYSIS

### A.    Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  This prohibition "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation.  *Williams*, 77 F.3d at 761.  On the subjective element, an inmate must show that the guards used force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  In assessing this element, a court should consider "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat . . . ;" and "(4) 'any efforts made to temper the severity of a forceful response.'"  *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321). As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).

Plaintiff does not deny engaging in conduct that prevented defendant Drybola from securing the feed-up slot in the cell door on January 3, 2019 and does not deny disobeying the order issued to remove his arm from the opening.  Rather, plaintiff asserts that he was not

endangering anyone's safety by engaging in this conduct and that Drybola violated prison regulations regarding use of force by shoving plaintiff's arm back through the feed-up slot. ECF No. 24 at 1. What plaintiff ignores, however, is that correctional officers are empowered to use that force which is necessary to "maintain or restore discipline." *Hudson*, 503 U.S. at 6. Here, defendant Drybola did not engage in a malicious act, rather he removed plaintiff's arm from the feed up slot so that order could be restored and his duties completed. Plaintiff's conclusory and unsupported allegation that Drybola removed his arm from the slot for the purpose of punishing him for filing a lawsuit against Drybola's colleagues is insufficient to show Drybola held a malicious motive.

The incident involving Daniels's use of pepper spray against plaintiff also involves undisputed material facts. Plaintiff does not deny refusing to give back the handcuffs he was wearing and stops short of denying that he was attempting to slip his handcuffs. ECF No. 24 at 2. He also does not dispute that Daniels deployed the pepper spray because of his refusal to return the handcuffs, and not because plaintiff threatened to file an ARP against Daniels. ECF No. 1-2 at 4. The use of a few bursts of pepper spray to gain plaintiff's compliance with multiple orders and to retrieve security equipment was a reasonable, tempered response to a situation created by plaintiff that threatened to escalate had he been successful in slipping his handcuffs. Notably pepper spray, in an amount no greater than necessary, may be used to control recalcitrant inmates, and is not per se unconstitutional. *Williams*, 77 F.3d at 763. Where, as here, there is no evidence that the chemical agent was deployed for the sole purpose of inflicting pain or that Daniels used more than a limited application of the chemical agent, there is no Eighth Amendment violation. *Iko*, 535 F.3d at 240.

Defendants Daniels and Drybola are entitled to summary judgment in their favor on the Eighth Amendment claims raised against them.

**B.    Conditions of Confinement**

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement," meaning that the condition resulted in a "serious or significant physical or emotional injury" or posed a "substantial risk of such serious harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citations and internal quotation marks omitted). "The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer* 511 U.S. at 837.

Plaintiff's claim that defendant Harding blocked the window of his holding cell, implying that this action somehow endangered his safety because he had swallowed a razor blade earlier that day and her actions "could've made [him] do other things to harm [him]self" (ECF No. 24 at 2) falls short of an Eighth Amendment violation. While he disputes that Harding only blocked one of the windows and relies on her failure to charge him with a rule violation for masturbating in front of her as proof that he did not do so, plaintiff fails to assert or offer any evidence of a significant injury that resulted or a substantial risk of serious harm. *Id*. *See De'Lonta*, 330 F.3d at 634. Defendant Harding is entitled to summary judgment in her favor on the Eighth Amendment claim.

For a similar reason, defendant Rounds is also entitled to summary judgment in his favor. Assuming the truth of plaintiff's allegation that Rounds swept overflowing sewage water back into plaintiff's cell from whence it came, plaintiff alleges no significant physical or emotional injury as a result nor any risk thereof. The failure to produce any evidence of such an injury is alone a sufficient basis to dismiss the claim against Rounds. *See e.g. Parker v. Stevenson*, 625 F. App'x 196, 200 (4th Cir. 2015) (affirming summary judgment injuries due to lack of a mattress failed to establish a serious or significant physical injury capable of supporting an Eighth Amendment conditions-of-confinement claim).

**C**.    **Medical Care**

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–11 (4th Cir. 2017). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious

medical condition.  *See Farmer*, 511 U.S. at 839–40.  Under this standard, the prison official must have "actual subjective knowledge both of the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Scinto*, 841 F.3d at 225 (citations, internal quotation marks, and alterations omitted).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

As noted, plaintiff does not oppose the motion to dismiss or for summary judgment filed by defendant Holly Hoover.  That motion, together with the declaration and verified medical records filed with it, establishes that plaintiff did not suffer an objectively serious medical need for which he was refused needed medical treatment.  At issue here is a one-inch long laceration to plaintiff's elbow sustained on January 3, 2019 for which he received wound care and an x-ray that verified there was no fracture or other abnormality that required medical attention.  ECF No. 13-5 at 1–7, 244.  And though plaintiff requested several times to see medical staff regarding nerve damage to his pinky finger as a result of the January 3rd incident, he never raised the issue with staff and there is no indication any issue with his finger was known to or should have been obvious to Hoover.  Hoover is thus entitled to summary judgment on the Eighth Amendment claim against her.

To the extent that plaintiff's claim against Harding with regard to blocking the windows in the holding cell is intended to be an Eighth Amendment claim for deprivation of psychiatric care, the claim fails.  There is "no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart." *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977); *see also DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("Courts treat an

inmate's mental health claims just as seriously as any physical health claims."). Plaintiff's assertion that blocking the windows in the holding cell might have somehow put him in jeopardy of committing further acts of self-harm lacks any allegation there was a serious risk of him doing so. ECF No. 24 at 2. There is no objective evidence that plaintiff had the means or the instruments available to him in the holding cell to cause himself harm, nor is there any objective evidence that an officer in Harding's position would have discerned that plaintiff required care that he was not already receiving and which was prevented by covering the window. Thus, to the extent it is raised, Harding is entitled to summary judgment in her favor on this claim.

## D.    Harassment and Retaliation

Plaintiff alleges generally that all of the defendants engaged in retaliatory conduct against him because he filed a lawsuit against two other officers and because he voiced his intent to file an ARP. ECF No. 1; ECF No. 24. In order to prevail on a claim of retaliation, plaintiff must demonstrate, first, that he exercised a constitutionally protected right. *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Second, he must show that the defendant's alleged retaliatory action adversely affected the protected right. *Id.* "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Third, there must be a causal relationship between the plaintiff's constitutionally protected activity and the defendant's retaliatory action. *Suarez*, 202 F.2d at 686. "The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; [plaintiff] must show that but for the protected [activity] the [defendant] would not have taken the alleged retaliatory action." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). "In the prison

15

context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994)).

Plaintiff asserts that the actions of Officers Rounds, Keolker, and House were retaliatory. ECF No. 24 at 2.  As for plaintiff's claim against Rounds, "it is the causation requirement on which [his] claim most clearly fails."  *Huang*, 902 F.2d at 1140. As evidence of Rounds's retaliatory motivations, plaintiff claims that "after he swept the feces and piss in my cell he stated, 'now that's for Clark, file a lawsuit[] on that.'"  *Id.*  Plaintiff explains he had a pending lawsuit against Earl Clark at the time.  *Id.*  The mention of a lawsuit brought by plaintiff, in this context, is insufficient to present a triable issue as to causation.  Where plaintiff had flooded the tier with the contents of his toilet, and there was a need to contain a biological hazard caused by him, plaintiff has not demonstrated that but for his prior lawsuit against Clark, Rounds would not have acted in the same way to prevent the further spread of wastewater into the prison.

Plaintiff also claims that the tickets filed against him by defendants House and Koelker were retaliatory.  ECF No. 24 at 2.  The ticket House wrote was for plaintiff's alleged masturbation and plaintiff maintains that the allegation that he masturbated in front of a male officer was designed to humiliate him.  *Id.*  The ticket was dismissed, and plaintiff stops short of claiming that the action chilled or affected the exercise of his constitutional rights.  Further, plaintiff entered a guilty plea to the ticket written by Koelker for possession of a controlled substance.  Again, to the extent that the ticket was written in response to plaintiff's actions it falls within the purview of an acceptable disciplinary response.  *Cochran*, 73 F.3d at 1317.  Defendants House and Koelker are entitled to summary judgment on the retaliation claims raised against them.

16

Plaintiff's conclusory claim against defendant Hoover, claiming that she too has retaliated against him, is without merit and must be dismissed.  Hoover's declaration, which is unopposed by plaintiff, states that she did not know anything about plaintiff's prior litigation.  *See* ECF No. 13-4 at 2-3, ¶ 6.  Coupled with plaintiff's failure to plead an injury resulting from the alleged retaliation, the retaliation claim against Hoover must fail.

## CONCLUSION

Having found no genuine dispute of material fact that warrants a merits trial on the claims raised, the motions for summary judgment filed on behalf of defendants shall be granted by separate order which follows.


1/11/2021                                          ____/S/_____
Date                                               Catherine C. Blake
                                                   United States District Judge